651

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2     - - - - - - - - - - - - - - - - X
         STEPHEN LEWIS,                  :   08-CV-3027 (JG)
3                                        :
                Plaintiff,               :
4                                        :
                                         :   United States Courthouse
5         -against-                      :   Brooklyn, New York
                                         :
6                                        :
                                         :
7         BRIAN FISCHER, et al,          :
                                         :   June 10, 2010
8                Defendants.             :   9:30 a.m.
                                         :
9     - - - - - - - - - - - - - - - - X

10                TRANSCRIPT OF CIVIL CAUSE FOR JURY TRIAL
                     BEFORE THE HONORABLE JOHN GLEESON
11                     UNITED STATES DISTRICT JUDGE

12                      A P P E A R A N C E S:

13    For the Plaintiff:  CRAVATH, SWAINE & MOORE, LLP
                              Worldwide Plaza
14                            825 Eighth Avenue
                              New York, New York 10019-7475
                          BY:  YONATAN EVEN, ESQ.
15                             ALEXANDRA REEVE GIVENS, ESQ.
                               MICHAEL A. SANFILIPPO, ESQ.
16                             DARIN P. McATEE, ESQ.

17    For the Defendants: STATE OF NEW YORK
                              OFFICE OF THE ATTORNEY GENERAL
18                            ANDREW M. CUOMO
                              120 Broadway
19                            New York, New York 10271-0332
                          BY:  THOMAS M. BIESTY, ESQ.
20                             MICHAEL J. KEANE, ESQ.
                               Assistant Attorneys General
21           Also Present:  Pamela Knight, paralegal

22
      Court Reporter:       Marie Foley, RPR, CRR
23                          Official Court Reporter
                            Telephone: (718) 613-2596
24                            Facsimile: (718) 613-2648
                              E-mail:  Marie_Foley@nyed.uscourts.gov
25    Proceedings recorded by computerized stenography.  Transcript
      produced by Computer-aided Transcription.

Proceedings                                        652

1              (In open court.)

2              (The following occurred outside the presence of the

3    jury.)

4              COURTROOM DEPUTY:  All rise.

5              (Judge Gleeson takes the bench.)

6              THE COURT: Good morning, everyone.

7              ALL:  Good morning, your Honor.

8              THE COURT:  Please be seated.

9              My law clerk reported to me last evening that a

10   settlement has been reached.

11             Is that correct?

12             MR. BIESTY:  Yes, your Honor.

13             MR. EVEN:  Yes.

14             THE COURT:  Do you want to come up and put the

15   stipulation of settlement on the record?

16             MR. EVEN:  Your Honor, do you want me to go through

17   it, or do you want me to just hand it?   How do you want us to

18   proceed with it?

19             THE COURT:  Is it lengthy?

20             MR. BIESTY:  No.

21             MR. EVEN:  It's four pages.

22             (Handing.)

23             THE COURT:  (Perusing document.)

24             Okay.  Well, the written stipulation dispenses with

25   the need to place it on the record orally.

Proceedings                          653

1          You realize, you've been over with your client that

2     this ends the case for him?   He can't come back later on and

3     seek additional relief against anybody arising out of these

4     events that occurred back in November of 2007 in the Arthur

5     Kill facility.   He understands that?

6               MR. EVEN:   He understands, your Honor.

7               THE COURT:   You understand that, sir?

8               MR. LEWIS:   Yes, your Honor.

9               THE COURT:   And, in a nutshell, the agreement is

10    payment of three hundred thousand dollars to Mr. Lewis.

11         There's not going to be any fee application on your

12    firm's part; is that correct?

13              MR. EVEN:   No.   Cravath waives all fees, your Honor.

14              THE COURT:   So stipulated, sir?

15              MR. EVEN:   So stipulated, your Honor.

16              MR. BIESTY:   That's correct, your Honor.

17              THE COURT:   This settlement puts an end to this

18    controversy between Mr. Lewis and these defendants, and so the

19    case is closed.   The end of the case brings an end to my

20    jurisdiction, to this court's subject matter jurisdiction, but

21    I hope it doesn't end the matter for the New York State

22    Department of Correctional Services.

23         The case arose out of a discrete event, a sexually

24    abusive pat and frisk conducted by Officer Burroughs in

25    November of 2007, but the trial's made it clear that there are

Proceedings                                    654

1   systematic problems in the management of the Arthur Kill

2   facility.  For all I know, those problems afflict the numerous

3   other state prisons as well.  But, in any event, at Arthur

4   Kill, they contribute to an environment that allows the abuse

5   of inmates to go unpunished.  That's bad enough, but when the

6   management failures, combined with what appears to be a

7   cultural imperative among corrections officers that they never

8   say anything that would get another officer in trouble, the

9   perverse effect is an atmosphere that fosters abuse.

10          The simple act of retrieving the grievances against

11  Officer Burroughs exposed one problem.  You'd naturally expect

12  that in any workplace, public or private, management would

13  keep track for each employee of all complaints made against

14  that employee.  That way a simple review of the employee's

15  file when a complaint was made would reveal the kind of red

16  flags that were all over the employment history of Officer

17  Burroughs.

18          There are other management problems revealed by the

19  evidence in this case, which I'll mention in a moment, and

20  this particular one, the way grievances are filed, doesn't

21  appear to be the reason Burroughs went unpunished despite a

22  series of sexual abuse claims over the years.  That's because

23  there was but one superintendent during the relevant time

24  period who was fully aware of those red flags.  So, the way

25  grievances are stored and retrieved was not the main problem

Proceedings                                         655

1    in this case.  At least that's the way it appears to me.  But

2    still, I can only assume that when a new superintendent takes

3    over at Arthur Kill, one who has no knowledge of the prior

4    histories of the officers there, all those officers will

5    essentially start again with a clean slate.  The red flags

6    that could warrant a more searching investigation of a

7    particular grievance or a particular officer will remain

8    buried in the prison's arcane filing system unless simple and

9    obvious changes are made.

10          The so-called investigation of inmate grievances of

11   this kind is another problem.  Unless an officer admits to

12   assaulting an inmate, which of course never happens, an

13   allegation of assault is found to be unsubstantiated.  And

14   although there may be exceptions, it appears to me that most

15   of the time no one even bothers to interview the complaining

16   inmate, the complained-about officer, or any witnesses.  If

17   the accused officer submits a memo saying "I didn't do it,"

18   that appears to be the end of it.

19          I was struck by Superintendent Breslin's testimony

20   about the investigation, such as it was, into Mr. Lewis'

21   grievance.  The testimony is on page 450 of the transcript.

22   Superintendent Breslin said, quote: There was, in fact, no

23   evidence of an improper pat frisk by Officer Burroughs, close

24   quote.  He's further asked that if he had found evidence that

25   Burroughs had acted improperly, what would he have done.  He

Proceedings                                          656

1    said he would have gone back to the inspector general's office

2    and told them to conduct a more thorough investigation.

3              I say this with respect and recognizing the limits

4    of my office and the limited information that's been placed

5    before me, but that mindset really needs to be changed.  It

6    can't rationally, defensibly be said that there was no

7    evidence of an improper pat frisk of Lewis.  Lewis said it

8    happened.  And if this trial's proved anything, it's proved

9    that a person's firsthand testimony of abuse at the hands of a

10   corrections officer is evidence, even if the person is a

11   convicted felon in a prison.  It may not always be reliable

12   evidence.  It may not always carry the day.  The risk of false

13   accusation is palpable, but it simply can't be said that it is

14   no evidence of wrongdoing.

15             And I don't think my quarrel with the superintendent

16   is merely semantic.  Indeed, I think that mindset that just

17   because an inmate says it happened is no evidence that it

18   happened is the bedrock of a disciplinary system that

19   literally never finds a grievance of this sort to be

20   substantiated.

21             Finally, I understand the logic that supports the

22   inference that an officer about whom there are lots of inmate

23   complaints must be doing a good job, but the prison

24   authorities can't always rule out the competing inference that

25   an officer who is the subject of lots of inmate complaints

Proceedings                                657

1    needs supervision and discipline.  That appears to have

2    occurred here.

3           Unlike the procedure for filing grievances for which

4    there is an obvious fix, I don't purport to have solutions for

5    these other problems, or even a sufficient record to fully

6    evaluate them.  And I'm mindful that there's lots that goes

7    into running a prison that I don't appreciate, including

8    security problems, resource limitations, and the like.  So I

9    leave the correction of these problems to others, at least for

10   now.

11          Obvious candidates for changes within the system

12   include actual interviews of inmates who make grievances,

13   actual interviews of officers rather than allowing them to

14   simply mail in a terse written denial.  It occurs to me that

15   the use of technological advances ought to be considered as

16   listening to the circumstances that were conjured by the other

17   complaints and the complaints of Mr. Lewis.  I've been around

18   the block a little bit.  I know there's very little that

19   happens in certain areas of facilities like Arthur Kill that's

20   not on camera.  I would imagine the use of that form of

21   technology could produce a much more informed and effective

22   disciplinary system at Arthur Kill and elsewhere.

23          The use of a more detached investigating officer

24   than the ones that were used in connection with the grievances

25   I heard evidence about is another obvious candidate for

Proceedings                                    658

1  change.

2         As I said, I recognize these issues are no longer

3  within my jurisdiction, but I hope DOCS moves forward from

4  this and learns from it and avoids having future cases like

5  this.

6         My thanks go to the Cravath firm for its pro bono

7  representation of Mr. Lewis.

8             Have a good day.

9             MR. BIESTY:  Thank you, your Honor.

10            MR. EVEN:  Thank you, your Honor.

11            (Pause in the proceedings.)

12

13            THE COURT:  I'll go back and excuse the jury.  I'll

14 tell the jury that the lawyers are free to speak to them and

15 they're free to speak to lawyers.  I'll also tell them that

16 they're free if they choose not to speak to anyone and that

17 you'll respect their wishes in that regard.

18            MR. BIESTY:  Thank you, your Honor.

19            MR. EVEN:  Thank you.

20            THE COURT:  Thank you.  Have a good day.

21            (Time noted:  9:55 a.m.)

22

23

24

25